STATE of Minnesota, Respondent,

v.

George Cornelius WATKINS, Appellant.

No. A11–1793.

Court of Appeals of Minnesota.

Sept. 10, 2012.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by RODENBERG, Presiding Judge; STAUBER, Judge; and CLEARY, Judge.

## OPINION

STAUBER, Judge.

Appellant challenges his conviction on two counts of violation of a domestic abuse no-contact order (DANCO), arguing that the evidence is insufficient to sustain the convictions and that the district court committed plain error by failing to instruct the jury that the state must prove beyond a reasonable doubt that appellant "knowingly violated" the DANCO in order to convict him. Appellant also challenges the calculation of his criminal-history score and the district court's imposition of a no-contact order as part of sentencing. Because the district court's instructions to the jury on the elements of the charged crime amount to plain error, we reverse appellant's convictions and remand for a new trial.

## FACTS

Appellant George Cornelius Watkins was charged by complaint with a variety of

offenses, including felony domestic assault. The state requested that bail be set at $200,000 without conditions or $125,000 on various conditions, including that appellant have no contact with B.N.T., the alleged victim. After the district court granted the state's bail request, the state requested a DANCO, and appellant's counsel commented that he had "no objection" to the issuance of the DANCO. The district court issued the order on October 19, 2010, which prohibited appellant from having contact with B.N.T. but misspelled her last name and listed an incorrect date of birth. Appellant was served with a copy of the order the day it was issued.

On January 6, 2011, appellant was charged by complaint with felony violation of the DANCO in violation of Minn.Stat. § 629.75, subd. 2(d)(1) (2010), on allegations that he telephoned B.N.T. on October 30, 2010. The state filed an amended complaint on May 4, 2011, adding a second count of felony-level DANCO violation. The amended complaint asserted that during the week of Valentine's Day in 2011, appellant sent B.N.T. a letter.

Appellant pleaded not guilty, and the matter proceeded to a jury trial. At trial, appellant admitted to receiving a copy of the DANCO and to contacting B.N.T. on the dates alleged in the complaint. But he asserted that he did not know that his actions were prohibited by the DANCO because of the misspelling of B.N.T.'s name, the fact that the DANCO listed a different date of birth, and that he did not know that the DANCO prohibited him from writing to B.N.T. if she wrote him first.

After closing arguments, the district court instructed the jury that:

1. The district court gave a substantively identical instruction, changing only the date, for Count II.

The statutes of Minnesota provide that whoever violates a domestic abuse no-contact order granted pursuant to the Domestic Abuse Act or similar law of another state and knows of the existence of the order is guilty of a crime.

. . . .

The elements of violation of a domestic abuse no-contact order are, first, there was an existing court domestic abuse no-contact order.

Second, the defendant violated a term or condition of the order.

Third, the defendant knew of the existence of the order.

Fourth, the defendant's act took place on or about October 30, 2010, in Hennepin County.[1]

If you find that each of these elements has been proven beyond a reasonable doubt, the defendant is guilty. If you find that any element has not been proven beyond a reasonable doubt, the defendant is not guilty.

(Footnote added.) Appellant did not object to the jury instructions. The jury convicted appellant on both counts. The district court sentenced appellant to 32 months on the first count and one year and one day on the second count, ordering both sentences to run consecutively. The district court also imposed a 5–year DANCO as part of appellant's sentence. This appeal follows.

## ISSUES

I. Did the district court commit plain error in not properly instructing the jury regarding the knowledge element of a felony violation of a DANCO?

II. Was the evidence sufficient to support the jury's guilty verdicts on the two felony-level-DANCO-violation charges?

## ANALYSIS

### I.

■ We first address appellant's argument that the district court's jury instructions require reversal of his convictions. A defendant's failure to propose specific jury instructions or to object to instructions before they are given generally constitutes a waiver of the right to challenge the instructions on appeal. *State v. Cross,* 577 N.W.2d 721, 726 (Minn. 1998). But "a failure to object will not cause an appeal to fail if the instructions contain plain error affecting substantial rights or an error of fundamental law." *Id.* The plain-error doctrine is satisfied by (1) an error, (2) that is plain, and (3) affects a party's substantial rights. *State v. Griller,* 583 N.W.2d 736, 740 (Minn. 1998). If these three prongs are met, a reviewing court must determine "whether it should address the error to ensure fairness and the integrity of the judicial proceeding." *Id.*

#### A. Error

We first analyze whether the district court's instructions were erroneous. The statutory provision, including the elements of a violation of a DANCO, reads as follows:

(b) A person who knows of the existence of a domestic abuse no contact order issued against the person and *violates* the order is guilty of a misdemeanor.

(c) A person is guilty of a gross misdemeanor who *knowingly violates* this subdivision within ten years of a previous qualified domestic violence-related offense conviction or adjudication of delinquency....

(d) A person is guilty of a felony ... if the person *knowingly violates* this subdivision:

(1) within ten years of the first of two or more previous qualified domestic violence-related offense convictions or adjudications of delinquency; or

(2) while possessing a dangerous weapon, as defined in section 609.02, subdivision 6[.]

Minn.Stat. § 629.75, subd. 2 (2010) (emphasis added).

Here, appellant was charged with two counts of felony-level DANCO violation. Under the statute, felony DANCO violation requires proof (1) of an existing DANCO; (2) that the defendant had knowledge of the DANCO; (3) that the defendant violated the DANCO; (4) of venue; (5) of either two or more previous qualified domestic-violence-related offense convictions or possession of a dangerous weapon; and (6) that the defendant *knowingly* violated the order. *See State v. Gunderson,* 812 N.W.2d 156, 160 (Minn.App.2012) (discussing felony-level violation of harassment restraining order). And while appellant stipulated to the previous qualified domestic-violence-related offense convictions, thereby removing that question from the jury's consideration, the district court's instructions to the jury only identified four of the five remaining elements: (1) an existing DANCO; (2) appellant having knowledge of the DANCO; (3) violation of the DANCO by appellant; and (4) venue.

■ Appellant argues that the district court instructed the jury as to the elements of a misdemeanor-level DANCO violation, as opposed to the elements of a felony-level violation. The district court's instruction directly reflects the statutory language used in describing a misdemeanor-level violation. The question, therefore, is whether the "knowingly violates" lan-

guage used in describing gross-misde-meanor- and felony-level violations requires more than proof that an individual knew of the existence of the order and in fact violated the order. *Compare* Minn. Stat. § 629.75, subd. 2(b) (defining misdemeanor DANCO violation) *with* Minn.Stat. § 629.75, subd. 2(c) (defining gross-misdemeanor DANCO violation) *and* Minn.Stat. § 629.75, subd. 2(d) (defining felony DANCO violation).

We recently addressed this question in the harassment-restraining-order (HRO) context. *Gunderson*, 812 N.W.2d at 159. The HRO statute, Minn.Stat. § 609.748, subd. 6 (2010), is substantially similar to section 629.75, and our analysis in *Gunderson* is instructive here. When defining gross-misdemeanor- and felony-level violations, the DANCO statute's plain language uses the term "knowingly" as an adverb modifying the verb "violates." Therefore, in order to convict appellant of a felony-level violation of a DANCO, the jury must first find that appellant was aware that his behavior was prohibited by the order. *See id.* at 160.

Under the plain language of the statute, the term "knowingly" is an element of the crime for which appellant was charged. Therefore, the district court's instructions to the jury, which omitted the "knowingly" term entirely, were erroneous. *See id.* at 161 (concluding the same in the HRO context).

**B. Plain error**

■ An error is plain if it is clear or obvious, meaning that it "contravenes case law, a rule, or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 302

(Minn.2006) (quotations omitted). "[F]ailure to properly instruct the jury on all elements of the offense charged is plain error." *State v. Vance*, 734 N.W.2d 650, 658 (Minn.2007), *overruled on other grounds by State v. Fleck*, 810 N.W.2d 303 (Minn.2012).

■ Here, the instruction given by the district court mirrors the instruction contained in 10 *Minnesota Practice*, CRIMJIG 13.54 (Supp.2009). But the jury instruction guides are "not precedential or binding." *State v. Kelley*, 734 N.W.2d 689, 695 (Minn.App.2007), *review denied* (Minn. Sept. 18, 2007). And "[w]hen the plain language of the statute conflicts with the CRIMJIG, the district court is expected to depart from the CRIMJIG and properly instruct the jury regarding the elements of the crime." *Gunderson*, 812 N.W.2d at 162. The district court's instruction conflicts with the plain language of the statute by omitting the "knowingly" element from the charged offense. Because the district court's instructions did not follow the clear statutory language, the error was plain.[2]

**C. Affected substantial rights**

■ The third-prong of the plain-error analysis requires consideration of whether the error affected a party's substantial rights. *Griller*, 583 N.W.2d at 740. In *Gunderson*, we conducted this analysis under the test articulated in *Vance*. 812 N.W.2d at 162–63. Under that test, "an error affects substantial rights if there is a reasonable likelihood that the error had a significant effect on the jury's verdict." *Vance*, 734 N.W.2d at 656. The supreme court in *Vance* held that the omission of an element of a crime from the instructions to

---

**2.** In reaching this conclusion, we recognize that the district court did not have the benefit of this court's opinion in *Gunderson* at the time of trial. Nonetheless, when evaluating the second-prong of the plain-error analysis,

"it is sufficient that the error is plain at the time of the appeal." *State v. Ihle*, 640 N.W.2d 910, 917 (Minn.2002) (quotation omitted).

the jury has a significant effect on the verdict if the defendant submits evidence that tends to negate the element and "there is a reasonable likelihood that a properly instructed jury could have accepted the defendant's version of events." *Id.* at 661.

But shortly after issuing its opinion in *Vance,* the supreme court issued its decision in *State v. Mahkuk,* 736 N.W.2d 675 (Minn.2007). In *Mahkuk,* the supreme court reaffirmed that it had "consistently held that when an erroneous jury instruction eliminates a required element of the crime[,] this type of error is not harmless beyond a reasonable doubt." 736 N.W.2d at 683 (quoting *State v. Hall,* 722 N.W.2d 472, 479 (Minn.2006)). And while *Mahkuk* did not address the issue under a plain-error standard, the supreme court has noted that the third prong of the plain-error analysis is "the equivalent of a harmless error inquiry," except for the fact that the defendant generally bears the burden of persuasion. *State v. Reed,* 737 N.W.2d 572, 583–84 n. 4 (Minn.2007). We therefore conclude that, as a matter of law, omission of an element of a charged offense from the jury instructions affects a party's substantial rights.

Our holding here is not inconsistent with supreme court precedent. While this court has routinely cited *Vance* as the controlling precedent for omission of an element of an offense in a jury instruction, the supreme court in *Vance* acknowledged but specifically declined to address the lack of clarity surrounding the issue, noting that the facts in *Vance* were "distinguishable from all of the foregoing cases in which a court deemed harmless the failure to submit an element of the offense to the jury." 734 N.W.2d at 661. *Vance* therefore does not stand for the principle that omission of an element in the jury instructions must

be subjected to an in-depth analysis on the third prong of the plain-error analysis.

### D. Ensuring the fairness and integrity of judicial proceedings

■ Having concluded that the district court's jury instructions constituted plain error that affected a party's substantial rights, we must determine whether a new trial is required to ensure the fairness and integrity of the judicial proceedings. *Griller,* 583 N.W.2d at 740. "Fairness requires that [the defendant] be given an opportunity to present his account of the facts to a jury *under the proper instructions." State v. Baird,* 654 N.W.2d 105, 114 (Minn.2002) (emphasis added). "The fairness and integrity of the judicial proceedings are called into question by the erroneous instructions and the verdict based on those instructions when the jury may not have considered a disputed element of the crime." *Gunderson,* 812 N.W.2d at 163 (quotation omitted).

Here, the district court's error prevented the jury from weighing the competing evidence and considering a disputed element of the crime. We therefore conclude that reversal of appellant's convictions and remand for a new trial is necessary to ensure the fairness and integrity of the judicial proceedings.

### II.

Appellant also argues that the evidence is insufficient to sustain his convictions, as the state did not establish beyond a reasonable doubt that the DANCO is the type of order that may form the basis for a criminal conviction or that appellant did in fact violate the DANCO. If we were to find that the evidence was insufficient to support the conviction, remand for a new trial would be barred by the constitutional principle of double jeopardy. *State v. Harris,* 533 N.W.2d 35, 36 n. 1 (Minn.

1995). We therefore address appellant's sufficiency argument notwithstanding the fact that we have reversed his convictions.

When considering a claim of insufficient evidence, an appellate court's review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to sustain the jury's verdict. *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989). On appeal, a reviewing court assumes that the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989). A jury's guilty verdict will not be disturbed if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty. *Bernhardt v. State,* 684 N.W.2d 465, 476–77 (Minn.2004).

### A. Type of order

■ Appellant argues that the state failed to prove that the DANCO was one that may form the basis for a criminal prosecution. This argument is based on the language in the statute that a DANCO is "independent of any condition of pretrial release or probation imposed on the defendant" and "shall be issued in a proceeding that is separate from but held immediately following a proceeding in which any pretrial release or sentencing issues are decided." Minn.Stat. § 629.75, subd. 1(b), (c) (2010). Appellant argues that because the transcript relied upon by the state indicates that the DANCO was issued at a pretrial hearing in which pretrial-release issues were decided and the DANCO itself states that "[c]ompliance with this [o]rder is a condition of [appellant's] release," the DANCO cannot form the basis for a criminal prosecution.

We read this argument as a challenge to the issuance of the DANCO itself. But appellant's counsel did not object to the issuance of the DANCO at the hearing. Furthermore, appellant's counsel affirmatively stated that he had "no objection" to the issuance of the order. We therefore hold that appellant has waived his challenge to the issuance of the DANCO. *See State v. Wembley,* 728 N.W.2d 243, 245–46 (concluding that defendant waived any right to challenge a procedure by consenting to and actively encouraging the procedure).

### B. Violation of the order

■ Appellant also argues that the state failed to prove that his contact with B.N.T. violated the order because the order prohibits him from having contact with someone whose name is spelled differently and has a different date of birth. But during the hearing at which the DANCO was issued, the state specifically identified B.N.T.—including spelling her name correctly—as the subject of the order and stated her address on the record, which is consistent with the address indicated on the DANCO. And B.N.T. testified that she was present in the courtroom when the DANCO was issued.

The state argues that the misspelling of B.N.T.'s last name in the written order and the erroneous birthdate are "typographical, clerical errors." A clerical error is one "which cannot reasonably be attributed to the exercise of judicial consideration or discretion." *Wilson v. City of Fergus Falls,* 181 Minn. 329, 332, 232 N.W. 322, 323 (1930). And "[c]lerical mistakes in a judgment, order, or in the record arising from oversight or omission may be corrected by the court at any time, or after notice if ordered by the court." Minn. R.Crim. P. 27.03, subd. 10.

Because a misspelling of a name and erroneous birthdate "cannot reasonably be attributed to the exercise of judicial consideration or discretion," they amount to clerical mistakes. We therefore reject appellant's insufficient-evidence argument on this ground. Because we remand the matter on other issues, we leave to the district court's discretion whether to modify the DANCO so that it accurately protects B.N.T.

## DECISION

We conclude that the district court committed plain error when it failed to properly instruct the jury that, in order to convict, it must find not only that appellant knew of the DANCO and intentionally contacted B.N.T., but also that in doing so he knowingly violated the DANCO. Because the erroneous instruction affected appellant's substantial rights, we reverse and remand for a new trial. We further conclude that, if an appropriate instruction had been given, the record evidence would have been sufficient to sustain the jury's verdict. Because we reverse and remand for a new trial, we decline to address appellant's arguments related to sentencing.

**Reversed and remanded.**